SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ALBANY
-------------------------------------------------------------------X
JOSEPH STERN, SHAUL STERN, SHIMSON STERN,
YOCHEVED KUSHNER, LAW OFFICE OF RICHARD B.
ANCOWITZ, and LAW OFFICE OF SANFORD ROSENBLUM,

                              Plaintiffs,                Index No.: 07597-16

- against -                              **SUMMONS**

WESTERMAN BALL EDERER MILLER & SHARFSTEIN, LLP,
NITSANA DARSHAN-LEITNER & ASSOCIATES
a/k/a NITSANA DARSHAN-LEITNER & CO., GREENBERG
TRAURIG, LLP, KREINDLER & KREINDLER, LLP,
SILVERMAN LAW FIRM, PLLC, PERLES LAW FIRM, PC,
MINTZ LEVIN, LLP, MINTZ LEVIN COHN FERRIS GLOVSKY
AND POPEO, PC, RAINES FELDMAN LLP and ROBERT TOLCHIN

                              Defendants.
-------------------------------------------------------------------X
To the above named defendants:

YOU ARE HEREBY SUMMONED and required to serve upon plaintiff's attorneys a verified answer to the verified complaint in this action within twenty days after the service of this summons, exclusive of the day of service, or within thirty days after service is complete if this summons is not personally delivered to you within the State of New York. In case of your failure to answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: December 1, 2016

                                                Law Office of Richard B. Ancowitz
                                                By: Richard B. Ancowitz
                                                Attorney for Plaintiff Pro Se
                                                115 Great Oaks Blvd
                                                Albany, New York 12203
                                                518-464-0444
                                                518-464-0798 (fax)

Law Office of Sanford Rosenblum
Sanford Rosenblum, Esq.
Attorney Pro Se
115 Great Oaks Boulevard
Albany, New York 12203
518-464-0444
518-464-0798 fax


Law Office of Sanford Rosenblum, co-Counsel
Law Office of Richard B. Ancowitz, co-Counsel
Attorneys for Plaintiffs
   Joseph Stern, Shaul Stern, Shimson Stern,
   and Yocheved Kushner
115 Great Oaks Boulevard
Albany, New York 12203
518-464-0444
518-464-0798 fax

The basis of venue designated above is Plaintiffs Sanford Rosenblum and Richard B. Ancowitz's residences.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ALBANY
-------------------------------------------------------------------X
JOSEPH STERN, SHAUL STERN, SHIMSON STERN,
YOCHEVED KUSHNER, LAW OFFICE OF RICHARD B.
ANCOWITZ, and LAW OFFICE OF SANFORD ROSENBLUM,

                         Plaintiffs,                  Index No.: 07597-16

- against -                                 **COMPLAINT**

WESTERMAN BALL EDERER MILLER & SHARFSTEIN, LLP,
NITSANA DARSHAN-LEITNER & ASSOCIATES a/k/a
NITSANA DARSHAN-LEITNER & CO., GREENBERG TRAURIG,
LLP, KREINDLER & KREINDLER, LLP, SILVERMAN LAW FIRM,
PLLC, PERLES LAW FIRM, PC, MINTZ LEVIN, LLP, MINTZ LEVIN
COHN FERRIS GLOVSKY and POPEO, PC, RAINES FELDMAN LLP
and ROBERT TOLCHIN

                         Defendants.
-------------------------------------------------------------------X

## THE PARTIES

1. On July 30, 1997, Leah Stern was grievously injured in Jerusalem, Israel as a result of a terrorist bombing carried out at the direction of the Republic of Iran. Mrs. Stern died as a result of her injuries.

2. At all times hereinafter mentioned, the children of Leah Stern, JOSEPH STERN, SHAUL STERN, and YOCHEVED KUSHNER, were residents of the State of New York, and SHIMSON STERN was a resident of the province of Ontario, Canada (hereinafter referred collectively as the "Stern family").

1

3. The plaintiff LAW OFFICE OF RICHARD B. ANCOWITZ has represented and currently represents the Stern family via its principal Richard B. Ancowitz, an attorney duly admitted to practice law in the State of New York, with a principal place of business in the County of Albany, State of New York.

4. The plaintiff LAW OFFICE OF SANFORD ROSENBLUM has represented and currently represents the Stern family via its principal Sanford Rosenblum, an attorney duly admitted to practice law in the State of New York, with a principal place of business in the County of Albany.

5.That at all times hereinafter mentioned, the defendant WESTERMAN BALL EDERER MILLER & SHARFSTEIN, LLP (the "WESTERMAN firm") was a limited liability partnership law firm comprised of attorneys duly authorized to practice law in the State of New York, with a principal place of business in Nassau County.

6. At all times hereinafter mentioned, Jeffrey A. Miller was an attorney with the WESTERMAN firm duly admitted to practice law in the State of New York.

7. That at all times hereinafter mentioned, NITSANA DARSHAN-LEITNER & ASSOCIATES a/k/a NITSANA DARSHAN-LEITNER & CO. (hereinafter "DARSHAN-LEITNER") was a law firm whose attorneys were not admitted to practice in New York, but upon information and belief, were admitted to practice in Israel.

8. That at all times hereinafter mentioned, the defendant GREENBERG TRAURIG, LLP, was a limited liability partnership law firm comprised of attorneys duly

authorized to practice law in the State of New York, with a principal place of business in New York County, and with an office in Albany County.

9. That at all times hereinafter mentioned, the defendant KREINDLER & KREINDLER, LLP, was a limited liability partnership law firm comprised of attorneys duly authorized to practice law in the State of New York, with a principal place of business in New York County.

10. That at all times hereinafter mentioned, the defendant SILVERMAN LAW FIRM, PLLC, was a professional limited liability partnership law firm comprised of attorneys duly authorized to practice law in the State of New York, with a principal place of business in New York County.

11. That at all times hereinafter mentioned, the defendant PERLES LAW FIRM, PC (the "PERLES firm") was a professional corporation with a principal place of business in the District of Columbia.

12. That at all times hereinafter mentioned, the defendant PERLES LAW FIRM, PC purported to represent the Stern family, for the most part residents of the State of New York during all times hereinafter mentioned, and transacted business in New York accordingly.

13. That at all times hereinafter mentioned, the defendant MINTZ LEVIN, LLP was a limited liability partnership law firm comprised of attorneys duly authorized to practice law in the State of New York, with a principal place of business in New York County.

14. That at all times hereinafter mentioned, the defendant MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, PC was a professional corporation comprised of attorneys

duly authorized to practice law in the State of New York, with a principal place of business in New York County.

15. That at all times hereinafter mentioned, the defendant MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, PC was the successor entity to MINTZ LEVIN LLP (both firms will be referred to collectively as the "MINTZ LEVIN firm".

16. At all times hereinafter mentioned, the defendant ROBERT TOLCHIN was an attorney duly admitted to practice law in the State of New York, with a principal place of business in Kings County.

17. That at all times hereinafter mentioned, the defendant RAINES FELDMAN LLP purported to represent the Stern family, for the most part residents of the State of New York during all times hereinafter mentioned, and transacted business in New York accordingly.

18. The defendants are each attorneys who have in the past represented, or purported to have represented, the Stern family.

## PRIOR REPRESENTATION OF THE STERN FAMILY

19. On or about May 11, 2000, the Stern family retained the WESTERMAN firm to represent them in order to recover on behalf of their mother's injuries and death.

20. A retainer concerning said representation was signed on behalf of the WESTERMAN firm by a partner in the firm, Jeffrey A. Miller.

21. Said retainer stated that the WESTERMAN firm had engaged the defendant law firm DARSHAN-LEITNER, co-counsel and/or assist them in the representation of the Stern family.

22. At all times hereinafter mentioned, and upon information and belief, the principal in the DARSHAN-LEITNER law firm was and is Nitsana Darshan-Leitner.

23. DARSHAN-LEITNER had in fact improperly solicited the Stern family to sign a retainer with the WESTERMAN firm.

24. At all times hereinafter mentioned, and upon information and belief, Nitsana Darshan-Leitner systematically did transact business and otherwise have a presence in the State of New York by, inter alia, representing the Stern family.

25. That on or about April 10, 2001, GREENBERG TRAURIG was retained by WESTERMAN to also represent the Stern family.

26. On July 10, 2001, the retainer between the Stern family and the WESTERMAN firm was ultimately modified by a further retainer, which was also signed by DARSHAN-LEITNER.

27. The WESTERMAN and DARSHAN-LEITNER firms apparently worked together for a time on behalf of the Stern family for a time under a fee sharing arrangement, but soon had a number of disagreements and ultimately a falling out.

28. That in 2003, DARSHAN-LEITNER withdrew from representing the Stern family, and abandoned their representation of the family.

29. On or about June 1, 2000, the WESTERMAN firm attempted to retain counsel in order to have an estate set up for Mrs. Stern, and a personal representative appointed for the estate, and even paid outside counsel to do so.

30. However, upon information and belief, no estate was set up, and no personal representative appointed by any court or other authority.

31. Plaintiffs' repeated inquiries in 2016 to defendants as to whether an estate had ever been set up for Mrs. Stern by any person were not responded to in any substantive way.

32. Ultimately, after engaging local counsel in Washington, D.C., an action was commenced by the WESTERMAN firm in the District Court for the District of Columbia pursuant to the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. §§ 1330, 1441, 1602–1611, for the injuries to and death of Mrs. Stern.

33. Said complaint denominated SHAUL STERN, one of the children Leah Stern, as "legal representative" of the estate.

34. The defendants in that action, the Republic of Iran and other related parties, did not answer the action, and a default judgment was entered on February 13, 2002.

35. Evidence was taken by affidavit in this action (and in other similar FSIA actions against the same or similarly situated defendants brought before the same Court and the same judge, Royce Lamberth), and a Judgment and Findings of Fact and Law were issued by the Court on July 16, 2003.

36. As germane here, the Court granted judgment (hereinafter referred to as "the judgment") for loss of solatium to each of Mrs. Stern's children in the amount of $3,000,000, and

also to SHAUL STERN in a representative capacity for the estate of Mrs. Stern in the amount of $1,000,000 for Mrs. Stern's pre-death pain and suffering.

37. On October 7, 2003, WESTERMAN attempted to renegotiate their retainer agreement with the Stern family.

38. The Stern family declined to so renegotiate.

39. On November 19, 2003, WESTERMAN advised the Stern family by letter that unless certain conflicts of interest could be resolved by them concerning DARSHAN-LEITNER and other clients that WESTERMAN was also representing, they would have to withdraw from representing the Stern family.

40. That shortly after sending this letter, WESTERMAN purported to withdraw from representing the Stern family.

41. That shortly after sending this letter, the WESTERMAN firm abandoned their representation of the Stern family.

42. Any claim of a lien or other entitlement to an attorney's fee by WESTERMAN should therefore be deemed invalid and/or extinguished.

43. That the WESTERMAN firm improperly abandoned the Stern family, due to considerations having nothing to do with their ethical obligations to the Stern family, but everything to do with their own self-interest.

44. That said defendants WESTERMAN and DARSHAN-LEITNER breached their ethical obligations to the Stern family via their conduct during their representation of the family.

45. The above-referred to 2003 judgment remained uncollected, and on May 9, 2008, the Stern family was given a retainer from NITSANA DARSHAN-LEITNER and the firm of Jaroslawicz and Jaros to collect on said judgment against purported assets of the Iranian government held by UBS AG.

46. Said retainer was expressly limited by its own terms to only permit recovery of said judgment only against UBS AG.

47. At that time, upon information and belief, ROBERT TOLCHIN signed the retainer agreement, of behalf of Jaroslawicz and Jaros.

48. Upon information and belief, NITSANA DARSHAN-LEITNER, the firm of Jaroslawicz and Jaros, and ROBERT TOLCHIN so attempted to collect the judgment against UBS AG, but were unsuccessful in doing so.

49. With the possible exception of the above-referred to retainer, upon information and belief, ROBERT TOLCHIN was not ever retained by the Stern family for any purpose.

50. Any claim of a lien or other entitlement to an attorney's fee by TOLCHIN should therefore be deemed invalid and/or extinguished.

51. All said attempts to collect the judgment were unavailing, and the judgment remained – and remains - uncollected as against the defendants in that action, the Republic of Iran and related parties.

52. On April 2, 2015, the Stern family retained the respondents KREINDLER & KREINDLER, LLP, (hereinafter "KREINDLER") and SILVERMAN LAW FIRM, PLLC (hereinafter "SILVERMAN") to represent them to collect this judgment.

53. That upon information and belief, the KREINDLER firm engaged the PERLES firm to assist them in attempting to collect upon this judgment.

54. That the PERLES firm re-served the 2003 judgment upon the judgment-debtor Republic of Iran and related defendants in that action, given that the prior service of same by TOLCHIN had been done incorrectly.

55. Said service of same was done without authorization by the Stern family.

56. That in any event, TOLCHIN's prior attempt to serve said judgment was done without the knowledge or authorization of the Stern family, as he had not been engaged by the Stern family for said purpose.

57. When it became apparent that the defendant firms were unable to collect upon the judgment, the Stern family retained the plaintiffs to represent them.

58. Plaintiffs then undertook significant efforts on behalf of the Sterns in order to enforce their rights and collect their judgment.

59. These efforts included preparing a challenge to the constitutionality of the JCPOA over the course of many months, which included consultations with noted constitutional and other scholars.

60. Despite the fact that plaintiffs ANCOWITZ and ROSENBLUM shared common clients with KREINDLER and SILVERMAN, all attempts made by said plaintiffs to work together with KREINDLER and SILVERMAN were rebuffed.

61. The Stern family discharged KREINDLER and SILVERMAN in June of 2016.

62. That each of the defendants who previously represented the Stern family, except for the PERLES firm, failed to ethically and properly consider the rights of the Stern family, and subjugated those rights to their own.

63. That each of the defendants who previously represented the Stern family, except for the PERLES firm, failed to comport themselves with the Code of Professional Responsibility as concerns said representation.

64. That the above-referred to defendants breached their fiduciary responsibilities to their former clients, the Stern family, and failed to advise their clients as to the status of the matter they were purporting to represent them about.

65. That the above-referred to defendants failed to act in good faith on behalf of their clients, and elevated their own self-interests concerning their attorney's fees above that of their clients.

66. That bickering, disputes, and arguments between the WESTERMAN and DARSHAN-LEITNER firms from approximately 2000-2002 needlessly delayed prosecution of the Stern family's action against the Republic of Iran, causing the Stern family to miss out on opportunities to receive compensation in a timely fashion, which was received by other families who had suffered similar grievous losses.

### CURRENT REPRESENTATION OF THE STERN FAMILY

67. On December 18, 2015, the Justice For The Victims of State Sponsored Terrorism Act ("VSSTA") was enacted into law, which set up a special fund designed to compensate the victims of State Sponsored (i.e. Iranian) terrorism. See, 42 USC 10609.

68. As a result of the requirement in law and Fund regulation that application to the Fund should be made on behalf of a decedent by the duly authorized "personal representative" of an Estate, and as part of appropriate due diligence, plaintiffs requested of defendants – on numerous occasions - a copy of the file maintained by each prior attorney.

69. Said requests were made in good faith by plaintiffs, on behalf of the Stern family.

70. That the defendant TOLCHIN either ignored or responded belligerently to such requests, and declined to provide a copy of any file.

71. That the defendant TOLCHIN then was purporting to speak on behalf of all prior attorneys.

72. That the silence of all prior attorneys to these requests indeed indicated that said prior attorneys were indeed permitting TOLCHIN to speak for them.

73. That none of the defendant attorneys provided any meaningful response to the plaintiffs, except for the PERLES firm, who offered assistance but indicated they did not possess a file containing any documentation beyond what could be found in the District Court's file.

74. The defendant KREINDLER responded that he did not even have a file.

75. That TOLCHIN's responses to plaintiffs indicated that he was putting his own interests, and the interests of the defendants for whom he purported to speak, above that of the Stern family, who were his former clients in a largely unrelated matter.

76. That despite being entirely irrelevant to plaintiff's request for information, TOLCHIN's responses to plaintiffs indicated that he and the prior attorney defendants were claiming an attorney's lien.

77. That instead of assisting the Stern family, TOLCHIN was then only concerned with his own self-interest, and the gaining of attorney's fees, to the detriment of the Stern family.

78. That TOLCHIN owed the Stern family a duty of cooperation concerning providing a copy of his file, and well as the file of the predecessor attorneys upon whose behalf he purported to speak.

79. That when it became apparent that TOLCHIN would – improperly - not provide any file to plaintiffs, after TOLCHIN contended that his and their claim of a retaining lien permitted them to not provide same, plaintiffs instead only asked for the name of the Court in which an estate was set up for Mrs. Stern, and when this was done.

80. This request was also ignored by TOLCHIN and defendants, and/or was expressly rebuffed, without legal justification by TOLCHIN and defendants.

81. As a result, any claim of an attorney's lien by the defendants, with the exception of the PERLES firm, should be deemed void due to their lack of cooperation and failure to abide by their fiduciary responsibilities to the Stern family.

82. No attorney's lien can result where the attorney has not obtained a "final order" on behalf of the client.

83. No final order was obtained here, as in order to be deemed a final order, the order must be properly served upon the defendants, Islamic Republic of Iran.

84. This was not properly done by any defendant until done by the PERLES firm in 2016.

## APPLICATION TO THE FUND

85. On October 6, 2016, the Stern family, via their attorneys, the above-named plaintiffs herein, made application to the Justice For The Victims of State Sponsored Terrorism Fund (hereinafter "the Fund"), relative to the death of their mother, Leah Stern.

86. That plaintiffs would have been able to make such application months earlier had TOLCHIN and defendants cooperated with plaintiffs requests for the file, and for the estate information requested.

87. That the aforementioned actions and inactions of TOLCHIN and defendants –with the exception of PERLES – and failure to comport with their ethical obligations to their former clients - caused needless harm and damage to the Stern family.

88. Said application to the Fund has resulted in acknowledgment from the Fund on or about November 15, 2016 that monies in an amount to be determined will be forthcoming to the Stern family.

89. That said funds, less any disputed attorney's fee, should be immediately released to the Stern family, who should not be held hostage to the unethical and/or unlawful acts of attorneys who they had previously purported to represent.

90. That defendants did not create any assets to which an attorney's lien pursuant to Judiciary Law Sec. 475 could attach.

91. That defendants did not obtain a "judgment or final order" upon which such a lien could attach.

13

92. That any claim by defendants, with the exception of the PERLES firm, for an attorney's lien pursuant to Judiciary Law Sec. 475 be deemed extinguished, based upon defendants' abandonment of the Stern family and their failure to comport themselves with New York's Rules of Professional Conduct.

93. That as concerns the PERLES firm, since they were not retained by the Stern family, but were instead apparently brought into the matter by the KREINDLER and SILVERMAN defendants, and thus have no attorney/client relationship with the Stern family, they should be compensated on a quantum meruit basis, since unlike all other defendants, they rendered services to and were helpful to the Stern family.

94. That the extinguishment of any claimed lien not be credited to the benefit of plaintiffs' attorney's fee, but should instead be credited to the Stern family, and apportioned to each of them in equal shares.

## CAUSE OF ACTION – DECLARATORY JUDGMENT – EXTINGUISHMENT OF PRIOR ATTORNEYS' CLAIM OF LIEN

95. Plaintiffs seek declaratory judgment as follows:

   A. Declaring the rights of the respective parties to the distribution of the funds awarded by the Victims of State Sponsored Terror Fund pursuant to the Justice For The Victims of State Sponsored Terrorism Act ("VSSTA"), 42 USC 10609;

   B. Declaring that said funds be permitted to be deposited and kept in an attorneys' escrow account by plaintiff Law Firm of Richard B. Ancowitz, Key

Bank escrow account number 325451000856 (the "Escrow Account"), pending further Order of this Honorable Court;

C. Declaring all amounts not legitimately in dispute be permitted to be disbursed from the Escrow Account immediately to the clients of the Law Office of Richard B. Ancowitz and Law Office of Sanford Rosenblum, to wit, SHAUL STERN, JOSEPH STERN, SHIMSON STERN, and YOCHEVED KUSHNER (hereinafter "the Stern family");

D. Determining and declaring the rights of all parties to any and all disputed sums relative to claims made to the Fund;

E. Setting down an expedited schedule for all parties to serve and file written statements setting forth each respective party's claims to entitlement of any disputed funds from the Escrow Account and basis for such claims, along with a detailed itemization of all funds claimed to be in dispute;

F. Extinguishing the claimed lien of defendants, for cause, and crediting the amount of any purported lien back to the Stern family for disposition in equal shares.

G. Determining that any lien claimed by defendants shall be declared invalid and/or extinguished due to the misconduct and/or ethical violations of defendants.

    H.    Determining that any lien claimed by defendants was extinguished as a result of the abandonment of the Stern family, as well as the failure of defendants to abide by their ethical obligations to their former clients.

    I.    Determining that attorneys' fees be awarded to the PERLES firm on a quantum meruit basis.

    J.    Determining, in the alternative, how attorney's fees should be apportioned as between attorneys having possessed or possessing a retainer agreement with the Stern family.

    K.    For such other relief as to this Court seems just and proper.

WHEREFORE, it is respectfully requested that the Court grant the relief requested herein, with costs, disbursements, interest, and attorney's fees as the Court may allow.

Dated:    Albany, New York
           December 5, 2016

                              Yours, etc.,

                              RICHARD B. ANCOWITZ

Plaintiff pro se
Law Office of Richard B. Ancowitz
115 Great Oaks Boulevard
Albany, New York 12203
518-464-0444
518-464-0798 fax

Law Office of Sanford Rosenblum
Sanford Rosenblum, Esq.
Attorney Pro Se
115 Great Oaks Boulevard
Albany, New York 12203
518-464-0444
518-464-0798 fax

Law Office of Sanford Rosenblum, co-Counsel
Law Office of Richard B. Ancowitz, co-Counsel
Attorneys for Plaintiffs
  Joseph Stern, Shaul Stern, Shimson Stern,
  and Yocheved Kushner
115 Great Oaks Boulevard
Albany, New York 12203
518-464-0444
518-464-0798 fax