IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

―――――――――――――――――――――

JOSEPH STERN, *et al.*,

               Plaintiffs,          Civil Action No.
                                       1:17-CV-0034 (FJS/DEP)
     v.

WESTERMAN BALL EDERER
MILLER & SHARFSTEIN, LLP, *et al.*,

               Defendants.

―――――――――――――――――――――

APPEARANCES:                  OF COUNSEL:

FOR PLAINTIFFS:

ROSENBLUM & PARTNERS, LLP      SANFORD ROSENBLUM, ESQ.
110 Great Oaks Blvd.                RICHARD B. ANCOWITZ, ESQ.
Albany, NY 12203

FOR DEFENDANT TOLCHIN:

THE BERKMAN LAW OFFICE, LLC    ROBERT J. TOLCHIN, ESQ.
111 Livingston Street, Suite 1928
Brooklyn, NY 11201

FOR MINTZ LEVIN DEFENDANTS:

MINTZ LEVIN COHN FERRIS        DOMINIC J. PICCA, ESQ.
GLOVSKY AND POPEO PC
666 Third Avenue
New York, NY 10017

<u>FOR DEFENDANT WESTERMAN</u>
<u>BALL EDERER MILLER &</u>
<u>SHARFSTEIN, LLP</u>:

WESTERMAN BALL EDERER MILLER   LAURA A. GILLEN, ESQ.
ZUCKER & SHARFSTEIN, LLP           JEFFREY A. MILLER, ESQ.
1201 RXR Plaza
Uniondale, NY 11556

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

This is an action in which the plaintiffs seek court guidance

concerning entitlement to attorney's fees for representing plaintiffs Joseph

Stern, Shaul Stern, and Yocheved Kushner (collectively the "Stern

Family") in their efforts to recover damages resulting from the death of

their mother, Leah Stern, in 1997 during a terrorist attack. The Stern

Family has now recovered over $1 million from a fund established by

federal statute to compensate victims of terrorists acts. Under that

statutory provision, attorneys representing victims eligible for

compensation from the fund are entitled to charge a fee of up to twenty-

five percent of the amount recovered. It is the recovery of this attorney's

fee that forms the basis for the instant dispute.

This action was initially commenced in New York State court, but

was subsequently removed by two defendants to this court. Currently

pending before the court are two motions. In the first, plaintiffs seek an order remanding the matter to state court, arguing that, despite the federal underpinnings of the legal proceedings leading to the Stern Family's recovery, the issues now being litigated are inherently matters of state concern, relating to the appropriate allocation of attorney's fees and the existence of charging liens against any recovery by the Stern Family. Plaintiffs also argue that defendants' removal to federal court was procedurally improper because it was not sought on behalf, or with the consent, of all defendants served in the action. Defendants have opposed plaintiffs' motion to remand, and have moved for an order finding that venue is improper in this district and directing that the action be transferred to the United States District Court for the District of Columbia, where the judgment awarding the Stern Family damages was entered. For the reasons set forth below, I recommend that plaintiffs' motion to remand be granted, and defendants' motion be denied as moot.

I.    BACKGROUND[1]

A tragic terrorist bombing that occurred on July 30, 1997, in Jerusalem, Israel, and killed Leah Stern serves as the genesis for this action. Dkt. No. 2 at 3; Dkt. No. 12-5 at 8.[2] Since that time, the Stern Family has been engaged in litigation to pursue damage claims against the Republic of Iran, at whose direction the bombing took place. *See generally* Dkt. No. 2. To that end, the Stern Family entered into a written retainer agreement with defendant Westerman Ball Ederer Miller & Sharfstein, LLP ("Westerman"), on or about May 11, 2000, to represent them in the matter.[3] Dkt. No. 2 at 6-7; Dkt. No. 12-1 at 4-5; Dkt. No. 12-5 at 8-9; Dkt. No. 12-6 at 32-34. The retainer agreement stated that defendant Nitsana Darshan-Leitner & Associates ("Darshan-Leitner "), an Israeil law firm, had been retained to assist defendant Westerman in

---

[1]    The following recitation of facts is drawn principally from plaintiffs' complaint. Dkt. No. 2.

[2]    Many of the documents submitted by plaintiffs in support of their motion to remand, including Dkt. No. 12-5, are duplicative of those submitted in opposition to defendants' motion to change venue. For the sake of simplicity, where duplicates exist in the record, I have cited only to those exhibits submitted in connection with plaintiffs' motion to remand.

[3]    The retainer agreement was subsequently modified on July 10, 2001. Dkt. No. 12-6 at 35-37.

representing the Stern Family.[4] Dkt. No. 2 at 7; Dkt. No. 12-5 at 9. The

retainer agreement also reflects that defendants Westerman and Darshan-

Leitner were to receive thirty-three percent of any recovery by the Stern

Family up to the first $10 million, and eight percent of any sum recovered

over that amount. *See* Dkt. No. 12-6 at 35.

After engaging local counsel in Washington, D.C., defendant

Westerman commenced an action on behalf of the Stern Family in the

United States District Court for the District of Columbia pursuant to the

Foreign Sovereign Immunities Act of 1986, 28 U.S.C. §§ 1330, 1441,

1602-1611, seeking compensation for the injuries to and death of Leah

Stern. Dkt. No. 2 at 8; Dkt. No. 12-1 at 5; Dkt. No. 12-5 at 9; Dkt. No. 12-7

at 2-21. The defendants in that action, which included the Republic of Iran

and other related parties, failed to answer the plaintiffs' complaint, resulting

in the entry of their default on February 13, 2002. Dkt. No. 2 at 8; Dkt. No.

12-1 at 5; Dkt. No. 12-5 at 9. Following the submission of evidence, District

Judge Royce C. Lamberth issued a decision and order on July 17, 2003,

awarding $1 million in compensatory damages for Leah Stern's pain and

suffering prior to her death, and $3 million to each of the four members of

---

[4]     A legal representation and fee-sharing agreement governing their joint
representation of the Stern Family was executed by defendants Darshan-Leitner and
Westerman in late February or early March 2000. Dkt. No. 12-6 at 39-41.

the Stern Family, for a total compensatory damage award of $13 million against all of the defendants. Dkt. No. 2 at 8-9; Dkt. No. 12-6 at 12-13; Dkt. No. 25-1 at 25-30. The court also awarded punitive damages in the amount of $300 million against the individual defendants. Dkt. No. 12-6 at 13.

In or about November 2003, defendant Westerman withdrew from representation of the Stern Family after certain conflicts of interest between defendants Darshan-Leitner and Westerman surfaced and could not be resolved. Dkt. No. 2 at 9; Dkt. No. 12-5 at 10. Thereafter, the judgment secured on behalf of the Stern Family languished, uncollected, for a period of five years. Dkt. No. 2 at 10.

On May 9, 2008, the Stern Family entered into a retainer agreement with defendant Darshan-Leitner and the law firm of Jaroslawicz and Jaros,[5] providing for legal representation to enforce the judgment against reported assets of the Republic of Iran held by UBS AG. Dkt. No. 2 at 10; Dkt. No. 12-5 at 10-11; Dkt. No. 12-7 at 46-47. That retainer agreement was signed by defendant Robert Tolchin ("Tolchin") on behalf of

---

[5]        Jaroslawicz and Jaros is not a party to this action.

Jaroslawicz and Jaros. Dkt. No. 2 at 10. The retained attorneys thereafter took steps to enforce the judgmet to no avail.[6] Dkt. No. 2 at 10.

On April 2, 2015, the Stern Family retained Kreindler and Kreindler LLP ("Kreindler ") and the Silverman Law Firm PLLC ("Silverman") to represent them in their continuing efforts to enforce their judgment. Dkt. No. 2 at 10-11; Dkt. No. 12-5 at 11; Dkt. No. 12-7 at 49-51. Kreindler subsequently engaged the Perles Law Firm, P.C. ("Perles"), to assist in that regard.[7] Dkt. No. 2 at 11. Kreindler and Silverman were subsequently discharged by the Stern Family in June 2016. *Id.* at 11.

In December 2015, hope for at least partial recovery of the 2003 judgment was provided to the Stern Family and other victims of state-sponsored terrorism through passage of the Justice for United States Victims of State Sponsored Terrorism Fund Act ("USVSST"), 42 U.S.C. § 10609. Dkt. No. 2 at 12; Dkt. No. 12-5 at 12. The USVSST was enacted to

---

[6]    The measures taken by defendant Tolchin and others on behalf of the Stern Family following their retention in 2008 are briefly outlined in defendants' memorandum in support of their motion to change venue. Dkt. No. 6 at 2. Although that memorandum is not sworn, and thus does not constitute evidence, the court is permitted to take judicial notice of defendant Tolchin's attempt to enforce the judgment in *Stern v. Islamic Rep. of Iran*, 73 F. Supp. 3d 46 (D. D.C. 2014), *aff'd*, *Weinstein v. Islamic Rep. of Iran*, 831 F.3d 470 (D.C. Cir. 2016). Fed. R. Evid. 201; *see also Kramer v. Time Warner Inc.*, 937 F.2d 767m 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts. . . to establish the fact of such litigation and related filings.").

[7]    Kreindler, Silverman, and Perles were all named as defendants in plaintiffs' complaint, but have been dismissed from this action by stipulation. Dkt. No. 19.

create a fund to compensate victims of state-sponsored terrorism. Dkt. No.
2 at 12. Victims, like the Stern Family, with judgments against state-
sponsors of terrorism, such as the Republic of Iran, are eligible to file
claims for recovery of fund moneys in accordance with the USVSST. 42
U.S.C. § 10609(c)(1). According to defendant Tolchin, a Special Master
has been appointed to oversee the administration of the USVSST fund
pursuant to 42 U.S.C. § 10609(b). Dkt. No. 6 at 2-3.

In or about August 2016, the Stern Family retained plaintiffs Richard
B. Ancowitz, Esq., and Sanford Rosenblum, Esq., two attorneys with
offices in Albany County, New York, to represent them in their efforts to
enforce their judgment pursuant to the USVSST.[8] Dkt. No. 12-5 at 11; Dkt.
No. 12-6 at 23. With the assistance of Attorneys Ancowitz and Rosenblum,
the Stern Family applied to the USVSST fund on October 6, 2016, for
recovery. Dkt. No. 2 at 15. Attorneys Ancowitz and Rosenblum contend
that their efforts to make an earlier application on behalf of the Stern
Family were hindered by defendants – principally defendant Tolchin –
through their failure to provide vital information necessary to make and

---

[8]    Plaintiffs' complaint does not specify precisely when those attorneys were
retained by the Stern Family. Dkt. No. 2 at 11.

support the Stern Family's claim.[9] *Id.* at 13. According to defendant

Tolchin, plaintiffs' USVSST application has been accepted by the Special

Master, Dkt. No. 6 at 2-3, and the parties recently represented to the court

that plaintiff Ancowitz has now received the funds from the USVSST fund

on behalf of the Stern Family. Dkt. Nos. 32, 33.

II.   PROCEDURAL HISTORY

    This action was filed on or about December 14, 2016, in Albany

County Supreme Court, by the Stern Family and Attorneys Ancowitz and

Rosenblum. Dkt. No. 1 at 2. Named as defendants in plaintiffs' complaint

are (1) Westerman; (2) Darshan-Leitner; (3) Greenberg Traurig, LLP; (4)

Kreindler; (5) Silverman; (6) Perles; (7) Mitz Levin, LLP, and its successor,

Mintz Levin Cohn Ferris Glovsky and Popeo, PC (collectively referred to

as "Mintz"); (8) Tolchin; and (9) Raines Feldman LLP. Dkt. No. 2 at 4-6.

    In their complaint, plaintiffs request judgment adjudicating the rights

of the parties to monies that have now been received by the Stern Family

pursuant to the USVSST, and declaring that none of the defendants have

a claim of entitlement to, or a charging lien against, that recovery. Dkt. No.

2 at 16-18. Following commencement of the action, an order was issued

---

[9]     Plaintiffs do not allege that the Stern Family suffered any prejudice as a result of
defendant Tolchin's alleged failure to cooperate.

9

by New York State Supreme Court Justice Christina L. Ryba on January 10, 2017, directing defendants to show cause why the court should not grant the relief requested, and setting the matter down for a hearing. Dkt. No. 12-5 at 1-4.

The action was removed to this court on January 10, 2017. Dkt. No. 1. The removal notice was signed by defendant Tolchin and by Dominic Picca, Esq., an attorney with defendant Mintz. *Id.* at 3-4. A consent to the removal was subsequently filed on behalf of defendant Westerman on January 25, 2017.[10] Dkt. No. 17.

On January 12, 2017, defendant Tolchin filed a motion seeking a transfer of this action to the United States District Court for the District of Columbia. Dkt. Nos. 5-7. Plaintiff subsequently moved, on January 18, 2017, for an order remanding the action to New York State Supreme Court. Dkt. No. 12. Both motions are opposed. Dkt. Nos. 21, 23. The pending motions have been referred to me by Senior District Judge Frederick J. Scullin for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(B)(1)(b).[11] Dkt. No. 14. Oral argument in

---

[10]     A declaration from Attorney Picca was filed on February 10, 2017, confirming that defendant Mintz joined in the notice of removal and "continued to consent to removal." Dkt. No. 20.

[11]     The referral by Judge Scullin references only the motion to remand. Dkt. No. 14. Ordinarily, a motion to transfer venue would fall within my non-consensual jurisdiction.

connection with the parties' motions was heard on February 27, 2017, at which time decision was reserved.

III.    DISCUSSION

A.    Motion to Remand[12]

Plaintiffs contend that this action should be remanded because (1) the removal was procedurally improper and (2) federal question jurisdiction, which served as the predicate for defendants' removal notice, does not exist. Dkt. No. 12-2 at 4-10.

1.    The Rule of Unanimity

Removal of an action to federal court is governed by 28 U.S.C. § 1446. In relevant part, that statute provides as follows:

> (b) Requirements; generally. –(1) The notice of removal of a civil action. . . shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action. . . is based, or within 30 days after the

---

*See, e.g., Salzman v. Travelers Home & Marine Ins. Co.*, No. 16-CV-4008, 2016 WL 3951206, at *1 (S.D.N.Y. July 20, 2016). In light of the interplay between the two motions, however, and my recommendation that the motion to remand be granted and the motion for a change of venue be denied as moot, I have formatted this opinion as a report and recommendation addressing both motions. *See Williams v. Beemiller, Inc.*, 527 F.3d 259, 266 (2d Cir. 2008) ("A motion to remand is not a 'pretrial matter' under [28 U.S.C.] § 636(b)(1)(A), and a magistrate judge presented with such a motion should provide a report and recommendation to the district court[.]").

[12]    The parties agree that the court should address plaintiffs' remand motion first before turning to defendants' motion to transfer venue.

service of summons upon the defendant if such
initial pleading has then been filed in court and is
not required to be served on the defendant,
whichever period is shorter.

(2)(A) When a civil action is removed solely under
section 1441(a), all defendants who have been
properly joined and served must join in or consent
to the removal of the action.

(B) Each defendant shall have 30 days after receipt
by or service on that defendant of the initial pleading
or summons described in paragraph (1) to file the
notice of removal.

(C) If defendants are served at different times, and
a later-served defendant files a notice of removal,
any earlier-served defendant may consent to the
removal even though that earlier-served defendant
did not previously initiate or consent to removal.

28 U.S.C. § 1446.

In this case, defendant Tolchin was served on December 20, 2016.

Dkt. No. 1 at 2. He thereafter filed a notice of removal to federal court on

January 10, 2017, and thus within the thirty-day period allotted by section

1446(b)(1). Plaintiffs do not contest the timeliness of defendant Tolchin's

notice of removal. *See generally* Dkt. No. 12-2.

The so-called "rule of unanimity," which was originally created under

the common law and later loosely woven into a 2011 amendment of

section 1446, requires that the remaining defendants "*who have been*

*properly joined and served* must join in or consent to the removal of the

12

action." 28 U.S.C. § 1446(b)(2)(A) (emphasis added). Significantly, section 1446(b)(2)(C) sets no time limit for an earlier-served defendant to file its consent after the notice of removal is filed by the later-served defendant. *See* 28 U.S.C. § 1446(b)(2)(C) ("If defendants are served at different times, and a later-served defendant files a notice of removal, any earlier-served defendant may consent to the removal even though that earlier-served defendant did not previously initiate or consent to removal.").

At the time defendant Tolchin filed the notice of removal, four other defendants had been served, including defendants Kreindler, Silverman, Westerman, and Mintz. Dkt. No. 12-8. Because Kreindler and Silverman are no longer parties to this action, their consent is immaterial. Dkt. No. 19. As for defendant Mintz, it was served with a summons and complaint on December 15, 2016, Dkt. No. 12-8 at 2, and it joined defendant Tolchin's notice of removal. Dkt. No. 1 at 4. In addition, defendant Mintz later filed a declaration reaffirming its consent to removal. Dkt. No. 20. Defendant Westerman filed its notice of consent to removal on January 25, 2017. Dkt. No. 17.

As for the remaining defendant in this matter, defendant Darshan-Leitner, there is no proof in the record that service upon that defendant has been effectuated. Although plaintiffs contend that defendant Darshan-

Leitner was served the state court summons, complaint, and order to show cause issued by the New York State Supreme Court Justice Ryba by Federal Express, Dkt. No. 27 at 6, Dkt. No. 27-1, such service of process does not comply with New York Civil Practice and Law ("CPLR") § 312-a, which provides for service by mail. Specifically, section 312-a(a) permits, as an alternative to the methods of personal service prescribed by the CPLR, service of the summons and complaint to be "served by the plaintiff . . . by first class mail . . ., together with two copies of a statement of service by mail and acknowledgement of receipt." N.Y. C.P.L.R. § 312-a(a). There is no evidence before the court that plaintiffs mailed defendant Darshan-Leitner a statement of service by mail and/or an acknowledgement of receipt. Dkt. No. 27-1. Moreover, service of process by mail is not complete until "the date the signed acknowledgement of receipt is mailed or delivered to the sender." N.Y. C.P.L.R. § 312-a (b). There is no evidence that plaintiffs have received the signed acknowledgment of receipt from defendant Darshan-Leitner. Accordingly, based on the record now before the court, I find that defendant Darshan-Leitner has not yet been served. For that reason, there is no requirement under section 1446 that it consent to removal. 28 U.S.C. § 1446(b)(2)(A).

Having determined that defendants have complied with the relevant mechanisms provided for in section 1446 in removing this action to federal court, remand is not appropriate based upon plaintiffs' argument that removal of the action was not effectuated in accordance with the governing procedural requirements.

2.    Federal Question Jurisdiction

A state court action over which a federal district court would have original jurisdiction may be removed by the defendants to a district in which the court where the action is pending is located. 28 U.S.C. § 1441(a); *see also Calif. Public Emp.'s Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86, 102 (2d Cir. 2004). In support of their removal of this action, defendants argue that original jurisdiction over plaintiffs' claims lies in federal court pursuant to 28 U.S.C. § 1331, which provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331; *see Debevoise v. Rutland Ry. Corp.*, 291 F.2d 379, 380 (2d Cir. 1961) ("Under the removal statue, where there is no diversity, a defendant's power to remove turns upon whether the plaintiff's claim arises under federal law within the meaning of [section] 1331." (citation omitted)).

Federal district courts are courts of limited jurisdiction. *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). In accepting matters for adjudication, district courts must ensure that the subject matter requirement is met, and they may raise the question of jurisdiction *sua sponte* at any point in the litigation. *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 107 (2d Cir.1997). A party seeking to invoke the jurisdiction of a federal court must shoulder the burden of demonstrating that its claims are properly brought in that forum. *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936); *see also Gonzalez v. Red Hook Container Terminal LLC*, No. 16-CV-5104, 2016 WL 7322335, at *1 (E.D.N.Y. Dec. 15, 2016) ("On a motion to remand, the party seeking removal bears the burden of establishing to a reasonable probability that removal is proper." (quotation marks omitted)). When removal based upon federal question jurisdiction is challenged, any doubts should be resolved against removability "out of respect for the limited jurisdiction of the federal courts and the rights of states[.]" *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007); *accord, Gonzalez*, 2016 WL 7322335, at *1.

To implicate federal question jurisdiction, a plaintiff's pleading must set forth a cause of action created by federal law. *Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 315 (2d Cir. 2016) (citing *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005)); *see also Gonzalez*, 2016 WL 7322335, at *2. A careful reading of plaintiffs' complaint in this case reflects that their claims arise out of a dispute among the various attorneys that currently or previously served as counsel for the Stern Family. *See generally* Dkt. No. 2. More specifically, the attorneys disagree with respect to the apportionment of any attorney's fees for work performed pursuant to the retainer agreements entered into between them and the Stern Family, and whether the Stern Family's failure to compensate their lawyers gives rise to a charging lien under New York Judiciary Law § 475.[13] *Id.* at 15-16. It would thus appear, at least at first

---

[13]    Section 475 provides as follows:

> From the commencement of an action, special or other proceeding in any court or before any state, municipal or federal department, except a department of labor, or the service of an answer containing a counterclaim, or the initiation of any means of alternative dispute resolution including, but not limited to, mediation or arbitration, or the provision of services in a settlement negotiation at any stage of the dispute, the attorney who appears for a party has a lien upon his or her client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, award, settlement, judgment or final order in his or her client's favor, and the proceeds thereof in

glance, that plaintiffs' claims implicate New York State law principles of contract and charging liens and do not arise under federal law.[14]

Federal question jurisdiction may "also extend[, however,] to state-law claims that 'turn on substantial questions of federal law.'" *Gonzalez*, 2016 WL 7322335, at *2 (quoting *Grable & Sons Metal Prods., Inc.*, 545 U.S. at 312). As the Supreme Court has said, "[T]he question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods., Inc.*, 545 U.S. at 314; *see also Gunn v. Minton*, 133 S. Ct. 1059, 1065 (2013) ("[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress.

---

whatever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination. The court upon the petition of the client or attorney may determine and enforce the lien.

N.Y. Judiciary L. § 475.

[14]    While plaintiffs' complaint cites New York law, it may ultimately be determined that principles relating to attorney liens from another jurisdiction, including potentially the District of Columbia, should apply. This potential conflict of laws issue does not affect my determination that federal jurisdiction over plaintiffs' claims does not lie.

Where all four of these requirements are met, we held, jurisdiction is proper because there is a serious federal interest in claiming the advantages thought to be inherent in a federal forum, which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." (quotation marks omitted)); *accord, Jacobson*, 824 F.3d at 315.

In this case, plaintiffs' complaint asks the court to determine the parties' rights to the distribution of the funds anticipated to be received by the Stern Family pursuant to the USVSST. Dkt. No. 2 at 16-17. To render such a determination, a court must examine the conduct of the parties with respect to obtaining the judgment rendered by Judge Lamberth. *Id.* at 16-17. Plaintiffs' complaint alleges that all defendants, with the exception of defendant Perles, are not entitled to a charging lien or fee because of their "misconduct and/or ethical violations[.]" *Id.* at 17-18. In addition, plaintiffs contends that, except for defendant Perles, defendants did "not obtain a 'final order' on behalf of the [Stern Family]" in light of the defendants' failure (specifically defendant Tolchin's) to properly serve the judgment upon the Republic of Iran. *Id.* at 14. Although plaintiffs' complaint does not cite legal authority for their allegation that defendant Tolchin failed to properly served the Republic of Iran, defendants contend the provision on

which plaintiffs rely for this proposition is 28 U.S.C. § 1608(e). Dkt. No. 21

at 9. Plaintiffs do not explicitly dispute defendants' contention. Dkt. No. 27

at 3. Plaintiffs do, however, maintain that the primary authority on which

they rely in contending that defendants are not entitled to a charging lien is

defendants' alleged violations of the New York Rules of Professional

Conduct. *See id.* at 2-4 (accusing defendants of violating Rules 1.1, 1.16,

and 7.3 of the New York Rules of Professional Conduct).

Based on my review of plaintiffs' complaint and the parties'

submissions, I am inclined to agree with plaintiffs that this matter does not

raise a substantial federal question. Though it is true that one of the

allegations in plaintiffs' complaint involves an accusation that defendant

Tolchin failed to properly serve Judge Lamberth's judgment upon the

Republic of Iran, and, therefore, did not obtain a final order on behalf of the

Stern Family pursuant to 28 U.S.C. § 1608(e), I agree with plaintiffs that

the thrust of their complaint accuses defendants, albeit vaguely, of ethical

misconduct that, in turn, breached their obligations to the Stern Family

under the respective retainer agreements. For example, in their complaint,

plaintiffs accuse defendant Darshan-Leitner of "improperly solicit[ing] the

Stern family to sign a retainer with [defendant] WESTERMAN[.]" Dkt. No. 2

at 7. Defendants Darshan-Leitner and Westerman are also accused of

abandoning the Stern Family. *Id.* at 7, 9. In addition, plaintiffs accuse all defendants of breaching their fiduciary responsibilities to the Stern Family and pursuing their own self-interests above their clients'. *Id.* at 12. These concerns, as described in plaintiffs' complaint, do not implicate substantial federal questions. Rather, they involve questions of state law that arise either under the retainer agreements entered into between defendants and the Stern Family or the code of ethics governing attorney practice. While the parties may dispute whether the laws of New York State or District of Columbia govern, the questions of attorney liens and recovery under retainer agreements are matters of local concern over which federal courts have little or no interest.

In sum, while the legal representation provided by defendants that is at issue in this case was rendered in connection with efforts to enforce a federal court judgment, such matters inherently present questions of local concern. Accordingly, I recommend a finding that defendants have failed to carry their burden of establishing that the court possesses subject matter jurisdiction over plaintiffs' claims, and that the matter was therefore improperly removed to this court.

3.    Attorney's Fees

In their motion to remand, plaintiffs request that the court award attorney's fees against defendant Tolchin for improperly removing the matter to this court. Dkt. No. 12-2 at 11. Defendants have responded by opposing that request and asking the court for attorney's fees to compensate them for having to oppose plaintiffs' motion. *See* Dkt. No. 21 at 18 ("The plaintiffs request . . . attorney's fees for their expense in bringing their motion. Had they not done so, the undersigned would not have requested fees. But since they requested fees, the undersigned makes a reciprocal request.").

The provision governing the procedures after removal to federal court, including a motion to remand, permits a district court to "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). A district court may award attorney's fees where "the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). "Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin*, 546 U.S. at 141.

In this case, it was reasonable for defendants to believe that there was a basis for federal jurisdiction in this matter. Not only did the

22

underlying matter arise under federal law, but plaintiffs' complaint also – albeit implicitly – invokes 28 U.S.C. § 1608(e) by accusing defendant Tolchin of failing to properly serve Judge Lamberth's judgment upon the Republic of Iran. Accordingly, I recommend against an award of attorney's fees to either party under section 1447(c).[15]

   B.   Change of Venue

   Defendants assert that venue in the Northern District of New York is improper and request that the matter be transferred to the United States District Court for the District of Columbia.[16] Dkt. No. 6 at 4. Plaintiffs oppose defendants' motion, arguing that venue in this district is proper because a substantial part of the events or omissions giving rise to the action occurred in this district. Dkt. No. 23 at 2. If my recommendation concerning plaintiffs' motion for remand is adopted, there will be no need to address defendants' change of venue motion, which will thereby be rendered moot. In the event the motion to remand is denied and the matter

---

[15]    It follows, from the previously discussed finding that removal was not proper, that there is no basis to recommend that defendants' request for an award of costs and attorney's fees be granted.

[16]    At oral argument, defendant Tolchin confirmed that defendants do not seek a transfer of this matter to the District of Columbia under 28 U.S.C. § 1404(a). Instead, they argue that venue in the action does not lie in the Northern District of New York, and that the matter should therefore be transferred to the District of Columbia pursuant to 28 U.S.C. § 1406.

remains in federal court, however, the question then becomes whether it should be transferred to the District of Columbia.

The venue statute that controls in this case provides that an action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that it is the subject of the action is situated[.]" 28 U.S.C § 1391(b)(2). In the event a court in which an action is pending finds that venue is improper, a court "shall dismiss, or if it be in the interest of justice, transfer [the] case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

In 2005, the Second Circuit joined several other circuits in clarifying that the phrase "a substantial part" does not mean "the substantial part," and, accordingly, venue may properly lie in more than one district pursuant to section 1391(b)(2). *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 356-57 (2d Cir. 2005). The court cautioned, however, that the venue statute must be strictly construed, and the term "significant" implies that "for venue to be proper, *significant* events or omissions *material* to the plaintiff's claim must have occurred in the district in question, even if other material events occurred elsewhere." *Glasbrenner*, 417 F.3d at 357 (emphasis in original).

In this case, it appears that the conduct giving rise to the liens that plaintiffs now seek to extinguish occurred both in New York, though not in this district, and elsewhere. *See generally* Dkt. No. 2. Many of the legal services giving rise to any alleged charging lien occurred in connection with a federal court action and resulting judgment in 2003, rendered in the United States District Court for the District of Columbia. *Id.* Some of defendants' efforts, including defendant Tolchin's, to enforce the judgment also occurred in the District of Columbia. *Id.*

Conversely, it does not appear that any of the acts giving rise to defendants' alleged liens occurred within this district. *Id.* Instead, the sole connection with this district appears to be that the law offices of plaintiff-attorneys Ancowitz and Ronseblum are located within the County of Albany, and thus within the Northern District of New York. Dkt. No. 2 at 4. To be sure, plaintiffs' complaint alleges that those two attorneys engaged in efforts to obtain information from the various defendants to support an application on behalf of the Stern Family for recovery from the USVSST fund. *Id.* at 15. Defendants' failures to perform pursuant to their retainer agreements and their alleged breaches of the applicable rules of professional conduct – the conduct that forms the basis of plaintiffs' action – however, all appear to have occurred outside of this district.

Plaintiffs' attempt to rely upon the portion of section 1391(b)(2) providing for proper venue where "a substantial part of property that is the subject of the action is situated" is unpersuasive. Prior to the receipt distribution form the USVSST fund, plaintiffs specifically argued that when a distribution was made from the fund, which has now occurred, the subject monies would be transferred to the escrow account for plaintiff Ancowitz, and therefore would be located within the Northern District of New York. Dkt. No. 23 at 4. Because venue is judged at the time an action is commenced, *Sullivan v. Tribley*, 602 F. Supp. 2d 795, 799 (E.D. Mich. 2009); *Technograph Printed Circuits, Ltd. v. Packard Bell Elecs. Corp.*, 290 F. Supp. 308, 326 (C.D. Calif. 1968) (citing *Hoffman v. Blaski*, 363 U.S. 335 (1960)), plaintiffs' argument is unavailing and does not provide a basis for venue.

In sum, I am unable to conclude that a substantial portion of the events giving rise to plaintiffs' claims in this case occurred in the Northern District of New York, and therefore find that venue here is improper. Accordingly, in the event that plaintiffs' motion to remand is denied and this case remains pending in federal court, I recommend that the action be transferred to the United States District Court for the District of Columbia.

IV.   <u>SUMMARY AND RECOMMENDATION</u>

Plaintiffs commenced this action seeking judicial determination of the parties' entitlement to attorney's fees in connection with the Stern Family's recovery of damages following their mother's death. Although the underlying matter giving rise to the entitlement to attorney's fees involved federal statutory provisions, the apportionment of the fees is disputed in light of plaintiffs' allegations that defendants, who formerly served as attorneys for the Stern Family, breached their obligations to their client in violation of both the retainer agreements governing the attorney-client relationship and ethical codes governing an attorney's practice – neither of which implicate federal law. Accordingly, I recommend that the matter be remanded to state court, but that the parties' cross-requests for costs and attorney's fees be denied. In the event that this recommendation is adopted, defendants' motion for change of a venue will be moot. If the portion of this report and recommendation addressing plaintiffs' remand motion is not adopted, however, then I recommend that the action be transferred to the United States District Court for the District of Columbia. Based upon the foregoing it is hereby respectfully

RECOMMENDED that plaintiffs' motion to remand this action to New York State Supreme Court. (Dkt. No. 12) be GRANTED, without an award

of costs or attorney's fees, and that defendants' motion for a change of venue (Dkt. No. 5) be DENIED as moot.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated:      March 23, 2017
            Syracuse, New York

David E. Peebles
U.S. Magistrate Judge