**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JOSEPH STERN, SHAUL STERN, SHIMSON**
**STERN, YOCHEVED KUSHNER, LAW OFFICE OF**
**RICHARD B. ANCOWITZ, and LAW OFFICE OF**
**SANFORD ROSENBLUM,**

                         **Plaintiffs,**

              **v.**                                      **1:17-CV-34**
                                                          **(FJS/DEP)**

**WESTERMAN BALL EDERER MILLER &**
**SHARFSTEIN, LLP; NITSANA DARSHAN-LEITNER &**
**ASSOCIATES, a/k/a Nitsana Darshan-Leitner & Co.;**
**MINTZ LEVIN, LLP; MINTZ LEVIN COHN FERRIS**
**GLOVSKY AND POPEO, P.C.; and ROBERT TOLCHIN,**

                         **Defendants.**
_____

**APPEARANCES**                          **OF COUNSEL**

**LAW OFFICE OF RICHARD B. ANCOWITZ**     **RICHARD B. ANCOWITZ, ESQ.**
115 Great Oaks Boulevard
Albany, New York 12203
Attorneys for Plaintiffs

**ROSENBLUM & PARTNERS, LLP**             **SANFORD ROSENBLUM, ESQ.**
110 Great Oaks Boulevard
Western Avenue at the Northway
Albany, New York 12203
Attorneys for Plaintiffs

**WESTERMAN BALL EDERER MILLER**          **LAURA A. GILLEN, ESQ**
**ZUCKER & SHARFSTEIN, LLP**              **JEFFREY A. MILLER, ESQ.**
1201 RXR Plaza
Uniondale, New York 11556
Attorneys for Defendant Westerman Ball Ederer
Miller Zucker & Sharfstein, LLP


**MINTZ LEVIN COHN FERRIS GLOVSKY**       **DOMINIC J. PICCA, ESQ.**
**AND POPEO, P.C.**
The Chrysler Center
666 Third Avenue
New York, New York 10017
Attorneys for Defendants Mintz Levin, LLP and
Mintz Levin Cohn Ferris Glovsky and Popeo, P.C.


**THE BERKMAN LAW OFFICE, LLC**           **ROBERT J. TOLCHIN, ESQ.**
111 Livingston Street
Brooklyn, New York 11230
Attorneys for Defendant Robert Tolchin


**SCULLIN, Senior Judge**


## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Pending before the Court is Magistrate Judge Peebles' Report and Recommendation, in

which he recommended that the Court grant Plaintiffs' motion to remand, *see* Dkt. No. 12, and

deny Defendant Tolchin's motion to transfer venue, *see* Dkt. No. 5, as moot, *see* Dkt. No. 37.

Only Defendant Tolchin submitted objections to these recommendations.  *See* Dkt. No. 38.


### II. BACKGROUND

Plaintiffs in this action seek guidance regarding entitlement to attorney's fees related to

various lawyers' efforts to litigate and enforce a judgment against the Republic of Iran for

damages, pursuant to the Foreign Sovereign Immunities Act, ("FSIA") of 1976, 28 U.S.C.

§§ 1602-1611, resulting from the death of Leah Stern in 1997 during a terrorist attack.  Largely

due to a recently enacted statute, Plaintiffs have now recovered more than $1,000,000 from a

fund established to compensate victims of terrorist acts.  *See* Justice for United States Victims of

State Sponsored Terrorism Act ("VSST"), 42 U.S.C. § 10609.  Under the VSST, attorneys

representing victims eligible for compensation from the fund are entitled to charge a fee of up to

twenty-five percent of the amount recovered.  It is the recovery of this attorney's fee that forms

the basis for the instant dispute.

The tragic event giving rise to this lawsuit occurred nearly 20 years ago when Leah Stern

was killed in a terrorist bombing in a market in Jerusalem, Israel on July 30, 1997.  In response,

Plaintiffs[1] filed a wrongful death and personal injury action against the Republic of Iran.  *See*

*Stern v. Islamic Republic of Iran*, 271 F. Supp. 2d 286 (D.D.C. 2003).  To that end, Plaintiffs

retained a law firm, Westerman Ball Ederer Miller & Sharfstein, LLP ("Westerman"), which

engaged Nitsana Darshan-Leitner & Associates ("Darshan-Leitner"), an Israeli law firm, to help

it litigate Plaintiffs' claim.  *See* Dkt. No. 12-5 at ¶ 9.  In the underlying lawsuit, the Republic of

Iran and the other defendants "failed to answer or enter an appearance"; and, thus, "the Court on

February 13, 2002, pursuant to 28 U.S.C. § 1608(e) and Fed. R. Civ. P. 55(a)" entered default in

Plaintiffs' favor.  *Stern*, 271 F. Supp. 2d at 288.

Despite the defendants' apparent willful default, to prevail, Plaintiffs had to "establish

[their] claim or right to relief by evidence that is satisfactory to the Court."  28 U.S.C. § 1608(e).

Therefore, Plaintiffs submitted affidavits and evidence that compelled the court to award

---

[1] Plaintiffs to the current action include several members of Leah Stern's family and their current attorneys.  When used alone, the term "Plaintiffs" refers to Leah Stern's family, not their attorneys.

Plaintiffs $13,000,000 in compensatory damages and $300,000,000 in punitive damages.  *See Stern*, 271 F. Supp. 2d at 302. (hereinafter referred to as the "FSIA judgement")

In or around November 2003, Defendant Westerman withdrew from representation of Plaintiffs after certain conflicts of interest between Defendants Darshan-Leitner and Westerman surfaced and could not be resolved.  *See* Dkt. No. 2 at ¶¶ 39-41.  Thereafter, the FSIA judgment languished for a period of nearly five years.  *See id*. at ¶ 45.

Then, in May 2008, Plaintiffs retained Defendant Darshan-Leitner and the law firm Jaroslawicz and Jaros, to provide legal services to enforce their unsatisfied judgment against UBS AG, a multinational bank that purportedly provided funds to Iran and Saddam Hussein.  *See id*. at ¶¶ 45, 46; *see also Rothstein v. UBS AG*, 708 F.3d 82 (2d Cir. 2013).  Defendant Tolchin signed the retainer agreement on behalf of Jaroslawicz and Jaros.  *See* Dkt. No. 2 at ¶ 47.  Ultimately, Defendants Darshan-Leitner and Tolchin's attempt to collect the debt was unsuccessful.  *See id*. at ¶ 51.

According to Plaintiffs, the only activity they authorized Defendant Tolchin to complete on their behalf was to litigate the above-mentioned case against UBS AG.  *See id*. at ¶ 49.  Nonetheless, Plaintiffs contend that Defendant Tolchin attempted to serve the FSIA judgment on the Republic of Iran pursuant to 28 U.S.C. § 1608(e).  *See id.* at ¶ 54.  However, Plaintiffs assert that Defendant Tolchin did so incorrectly.  *See id*.

Thereafter, on April 2, 2015, Plaintiffs retained Kreindler & Kreindler, LLP and Silverman Law Firm as their attorneys to help them collect on the FSIA judgment. *See id*. at ¶ 52.  These firms then engaged the Perles Firm to assist them.[2] *See id.* at ¶ 53.  The Perles Firm

---

[2] Kreindler & Kreindler, LLP, Silverman Law Firm, and Perles Law Firm were all named as defendants in Plaintiffs' complaint but have been dismissed from this action by stipulation.  *See* Dkt. No. 19.

"then re-served the 2003 judgment upon the judgment-debtor Republic of Iran and related defendants in that action, given that the prior service of same by [Defendant Tolchin] had been done incorrectly." *See id*. at ¶ 54.  Plaintiffs subsequently discharged Kreindler & Kreindler, LLP and Silverman Law Firm in June 2016.  *See id.* at ¶ 61.  Plaintiffs, then retained the Plaintiff law firms, Law Office of Richard B. Ancowitz ("Ancowitz") and Rosenblum & Partners, LLP ("Rosenblum"), to represent them. *See id.* at ¶ 57.

In the meantime, the VSST was enacted into law on December 18, 2015, "which set up a special fund designed to compensate the victims of State Sponsored (*i.e.*, Iranian) terrorism." *See id.* at ¶ 67 (citing 42 U.S.C. § 10609).  On October 6, 2016, Plaintiffs, through their newly retained counsel, applied for compensation through the VSST.  *See id.* at ¶ 85.  Plaintiffs have recovered more than $1,000,000 from the fund.  *See* Dkt. No. 37 at 2.

As recounted above, the VSST allows attorneys to charge up to twenty-five percent of the amount recovered as a fee.  Plaintiffs initiated this action in New York Supreme Court, Albany County, on December 14, 2016, to determine to whom that fee should be distributed.  Generally, Plaintiffs argue that the Court should bar their previous attorneys, Defendants in this action, from receiving any fee in connection with their work.  In that regard, Plaintiffs make various arguments for why Defendants should not prevail, each of which is animated in large part by New York Judiciary Law § 475, because the fundamental issue in this case is whether Defendants have a valid lien on Plaintiffs' recovery.

Defendant Tolchin removed the matter to this District on January 10, 2017.  *See* Dkt. No. 1.  Thereafter, on January 12, 2017, Defendant Tolchin filed a motion seeking to transfer this action to the United States District Court for the District of Colombia.  *See* Dkt. No. 5.  On

January 18, 2017, Plaintiffs moved for an order remanding the action to New York Supreme Court. *See* Dkt. No. 12.

The Court referred the motion to remand to Magistrate Judge Peebles, who also considered the motion to change venue. *See* Dkt. No. 37. Magistrate Judge Peebles recommended that the Court grant Plaintiffs' motion to remand on the ground that the parties' dispute did not present a federal question and consequently recommended that the Court deny Defendant's motion to transfer venue as moot. *See* Dkt. No. 37. Defendant Tolchin filed objections only with respect to Magistrate Judge Peebles' recommendation that this Court remand the case to state court for lack of subject matter jurisdiction. *See* Dkt. No. 38.

## III. DISCUSSION

**A.    Standard of review**

When a party submits a timely objection to a report and recommendation, the court will review the parts of the report and recommendation to which the party objects under a *de novo* standard of review. *See* 28 U.S.C. § 636(b)(1)(C) (stating that "[a] judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made"); *see also* Fed. R. Civ. P. 72(b)(3) (stating that "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to"). In reviewing a report and recommendation, the court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

On the other hand, where none of the parties have filed a timely objection, a district court need only find that "there is no clear error on the face of the record" to accept a magistrate

judge's report and recommendation.  *Nelson v. Smith*, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985) (citation omitted); *see also Mario v. P & C Food Mkts., Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) (stating that, "[w]here parties receive clear notice of the consequences, failure timely to object to a magistrate's report and recommendation operates as a waiver of further judicial review of the magistrate's decision" (citing *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam)).

**B.    Plaintiffs' motion to remand**

   ***1. Removal was procedurally proper***

   Magistrate Judge Peebles initially found that Defendant Tolchin properly removed this case to federal court despite lacking Defendant Dashan-Leitner's consent because Defendant Darshan-Leitner was not properly served.  *See generally* Dkt. No. 37 at 11-15.  The parties do not object to Magistrate Judge Peebles' recommendation, and the Court has not identified an error in his analysis.  Therefore, the Court accepts Magistrate Judge Peebles' recommendation that removal was procedurally proper.

   ***2. Federal question jurisdiction was lacking***

   ***a. Magistrate Judge Peebles' reasoning***

   After laying the framework for federal question jurisdiction, Magistrate Judge Peebles first determined that Plaintiffs' "claims arise out of a dispute among the various attorneys that currently or previously served as counsel for the Stern Family."  *See* Dkt. No. 37 at 17 (citation omitted).  More specifically, Magistrate Judge Peebles concluded that "the attorneys disagree with respect to the apportionment of any attorney's fees for work performed pursuant to the

retainer agreements entered into between them and the Stern Family, and whether the Stern

Family's failure to compensate their lawyers gives rise to a charging lien under New York

Judiciary Law § 475." *See id.* (citation and footnote omitted).  Thus, Magistrate Judge Peebles

determined that Plaintiffs' "claims implicate New York State law principles of contract and

charging liens and do not arise under federal law." *See id.* at 18 (footnote omitted).

Nevertheless, Magistrate Judge Peebles recognized that "[f]ederal question jurisdiction

may 'also extend[, however,] to state-law claims that "turn on substantial questions of federal

law."'" *See id*. (quotation omitted).  In that regard, "'the question is, does a state-law claim

necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum

may entertain without disturbing any congressionally approved balance of federal and state

judicial responsibilities.'" *See id.* (quoting *Grable & Sons Metal Prod., Inc.*, 545 U.S. at 314)

(other citation omitted).

Magistrate Judge Peebles' analysis with respect to whether the complaint raised a

substantial federal question follows.  The Court has reproduced it in its entirety because it forms

the basis for Defendant Tolchin's objections.

> In this case, plaintiffs' complaint asks the court to determine the parties'
> rights to the distribution of the funds anticipated to be received by the Stern
> Family pursuant to the USVSST. Dkt. No. 2 at 16-17.  To render such a
> determination, a court must examine the conduct of the parties with respect to
> obtaining the [FSIA judgement]. *Id*. at 16-17.  Plaintiffs' complaint alleges that
> all defendants, with the exception of defendant Perles, are not entitled to a
> charging lien or fee because of their "misconduct and/or ethical violations[.]" *Id*.
> at 17-18.  In addition, plaintiffs contends [sic] that, except for defendant Perles,
> defendants did "not obtain a 'final order' on behalf of the [Stern Family]" in light
> of the defendants' failure (specifically defendant Tolchin's) to properly serve the
> judgment upon the Republic of Iran. *Id*. at 14.  Although plaintiffs' complaint
> does not cite legal authority for their allegation that defendant Tolchin failed to
> properly serve the Republic of Iran, defendants contend the provision on which
> plaintiffs rely for this proposition is 28 U.S.C. § 1608(e). Dkt. No. 21 at 9.
> Plaintiffs do not explicitly dispute defendants' contention. Dkt. No. 27 at 3.
> Plaintiffs do, however, maintain that the primary authority on which they rely in

contending that defendants are not entitled to a charging lien is defendants' alleged violations of the New York Rules of Professional Conduct. *See id.* at 2-4 (accusing defendants of violating Rules 1.1, 1.16, and 7.3 of the New York Rules of Professional Conduct).

Based on my review of plaintiffs' complaint and the parties' submissions, I am inclined to agree with plaintiffs that this matter does not raise a substantial federal question. Though it is true that one of the allegations in plaintiffs' complaint involves an accusation that defendant Tolchin failed to properly serve Judge Lamberth's judgment upon the Republic of Iran, and, therefore, did not obtain a final order on behalf of the Stern Family pursuant to 28 U.S.C. § 1608(e), I agree with plaintiffs that the thrust of their complaint accuses defendants, albeit vaguely, of ethical misconduct that, in turn, breached their obligations to the Stern Family under the respective retainer agreements. For example, in their complaint, plaintiffs accuse defendant Darshan-Leitner of "improperly solicit[ing] the Stern family to sign a retainer with [defendant] WESTERMAN[.]" Dkt. No. 2 at 7. Defendants Darshan-Leitner and Westerman are also accused of abandoning the Stern Family. *Id.* at 7, 9. In addition, plaintiffs accuse all defendants of breaching their fiduciary responsibilities to the Stern Family and pursuing their own self-interests above their clients'. *Id.* at 12. These concerns, as described in plaintiffs' complaint, do not implicate substantial federal questions. Rather, they involve questions of state law that arise either under the retainer agreements entered into between defendants and the Stern Family or the code of ethics governing attorney practice. While the parties may dispute whether the laws of New York State or District of Columbia govern, the questions of attorney liens and recovery under retainer agreements are matters of local concern over which federal courts have little or no interest.

*See id.* at 19-21.

Accordingly, Magistrate Judge Peebles "recommend[ed] a finding that defendants have failed to carry their burden of establishing that the court possesses subject matter jurisdiction over plaintiffs' claims, and that the matter was therefore improperly removed to this court." *See id.* at 21.

### b. Details of Defendant Tolchin's[3] objections

Initially, Defendant contends that "[t]his fee dispute could have -- and should have -- been initiated as a motion in the underlying case in federal court in the District of Columbia." *See* Dkt. No. 38 at 7.  However, Plaintiffs instead chose to sue "in New York State Supreme Court, Albany County, which has absolutely no connection to this litigation." *See id.* at 7-8.  Indeed, according to Defendant, "the *only* connection between this dispute and Albany County is that plaintiffs' new counsel -- who did an infinitesimally small amount of work -- maintain their office there." *See id.* at 8.

With regard to the current litigation, Defendant states that Plaintiffs' major contention is that the Defendant law firms are not entitled to part of the forthcoming attorney's fee because

> [n]o attorney's lien can result where the attorney has not obtained a "final order"
> on behalf of the client.  No final order was obtained here, as in order to be deemed
> a final order, the order must be properly served upon the defendants, Islamic
> Republic of Iran.  This was not properly done by any defendant until done by the
> PERLES firm in 2016.

*See id.* at 9-10 (citing Dkt. No. 2 ¶¶ 81-84 (paragraph breaks omitted)).

Thus, Defendant argues that Plaintiffs' complaint "ask[s] . . . whether a judgment obtained under the FSIA is 'final' if it has not been 'properly served' on the foreign state defendant." *See id.* at 10.  In that vein, Defendant asserts that "plaintiffs are relying upon 28 U.S.C. § 1608(e), which states, in pertinent part: 'A copy of any . . . default judgment *shall be sent* to the foreign state or political subdivision in the manner prescribed for service in this section.'" *See id.* (quoting 28 U.S.C. § 1608(e)).  In short, the federal question in this case is the proper application and

---

[3] When used alone, the term "Defendant" refers exclusively to Defendant Tolchin for the remainder of this Memorandum-Decision and Order.

interpretation of 28 U.S.C. § 1608(e), which, according to Defendant, "is a substantial federal issue that deserves -- and is entitled -- to be resolved in a federal forum." *See id*. at 11.

Agreeing with Magistrate Judge Peebles, Defendant asserts that "'federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress[.]'" *See id*. at 12 (quoting *N.Y. ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 315 (2d Cir. 2016)).  Defendant contends that Magistrate Judge Peebles only identified the third factor, substantiality, as posing a problem in this case.  *See id*. As to the other three factors, Defendant relies on his opposition to the motion to remand, *see* Dkt. No. 21, and Magistrate Judge Peebles' "implicit[]" finding that the proper application and interpretation of 28 U.S.C. § 1608(e) "has been necessarily (that is, unavoidably) raised, actually disputed, and capable of resolution without undermining principles of federalism," s*ee* Dkt. No. 38 at 12-13.

As to the substantiality prong, Defendant argues that "the proper interpretation and application of § 1608(e) -- 'implicates 'a serious federal interest in claiming the advantages thought to be inherent in a federal forum[.]'" *See id.* at 13 (quoting *Jacobson*, 824 F.3d at 316 (quoting *Grable*, 545 U.S. at 313)).  Defendant asserts that "28 U.S.C. § 1608(e) is a significant part of the FSIA, a federal statute governing civil litigation against foreign states." *See id*.  FSIA, according to Defendant, raises significant issues related to "international comity, sovereignty, and the conduct of foreign relations[,]" which are all federal issues.  *See id.*  Defendant contends that the "federal government undoubtedly has a serious federal interest in the uniform interpretation and application of the FSIA, solicitous of the federal policies that animate it." *See id*.

Moreover, Defendant argues that, "[e]ven if [Magistrate] Judge Peebles was correct in asserting that the state law issues in this case predominate over the federal ones, his conclusion that the federal issue is thus insubstantial was erroneous." *See id.* at 14 (footnote omitted). Rather, Defendant contends that "the case law makes clear that a federal issue may be held adequately 'substantial' for removal purposes even if it is plainly subordinate to state-law issues." *See id*.

In that regard, Defendant first describes *Grable*, which involved a suit under state law to quiet title. *See id*. Defendant states that, in *Grable*, the plaintiff argued that the defendant did not purchase the property from a bona fide owner. *See id.* The defendant then removed the case, "arguing that the plaintiffs' case turned 'on the interpretation of [a] notice statute in federal tax law.'" *See id.* (quoting *Grable*, 545 U.S. at 311). The court upheld the district court's removal jurisdiction, "finding the federal interest in resolution of the tax questions adequately substantial." *See id.* (citing *Grable*, 545 U.S. at 312-14).

Defendant asserts that this case is similar to *Grable* in important respects. Defendant argues that, here, "plaintiffs purport to state a claim under state law for the extinguishment of the liens of various attorneys and to apportion the award of attorney's fees." *See id.* However, according to Defendant, "their argument turns 'on the interpretation of [a] notice statute in the [FSIA].'" *See id.* (quoting *Grable*, 545 U.S. at 311) (citing 28 U.S.C. § 1608(e) (requiring that a default judgment entered under the FSIA "be sent to the foreign state" so that such state will have notice of the judgment) (footnote omitted)).

Furthermore, Defendant asserts that the Second Circuit, in *Jacobson*, "affirmed the district court's exercise of jurisdiction, giving not a moment's thought to the predominance, *vel non*, of the federal issue." *See id.* (citing *Jacobson*, 824 F.3d at 310). Instead, Defendant

contends that "the Second Circuit analyzed only the significance of the federal interest in the resolution of questions pertaining to pertinent sections of the tax code. It did not consider the substantiality of that interest in the context of the litigation." *See id*.  Defendant additionally cites *NASDAQ OMX Grp. v. UBS Sec.*, 770 F.3d 1010 (2d Cir. 2014), for the proposition that a substantial federal issue need only be present in one of the putative claims. *See id.* (citing *NASDAQ*, 770 F.3d at 1020).

In addition, Defendant contends that the most important issue in this case will, in fact, be whether he properly served notice of the judgment on Iran. *See id*. at 16-17.  In that sense, Defendant asserts that "the only specific and arguably plausible actionable allegations that the plaintiffs assert against [him] are 1) [his] alleged failure to serve the underlying judgment on Iran in accord with 28 U.S.C. § 1608(e), and 2) [his] insistence, consistent with New York law, that the plaintiffs acknowledge an attorney's lien prior to his sharing with them his case file." *See id*. at 18 (citing Dkt. No. 2 at 11-12; *Rivkin v. A.J. Hollander & Co.*, No. 95CIV.9314, 1996 WL 633217, *5 (S.D.N.Y. Nov. 1, 1996)).  According to Defendant, both of these issues turn largely on his alleged failure to comply with § 1608(e).  *See id.*  Thus, Defendant argues that, "far from the state law issues predominating over the federal ones, the federal issue effectively amounts to the plaintiffs' entire case against [him]." *See id*.

Finally, Defendant argues that the well-pleaded complaint rule is not applied in the same fashion in an action, such as this, for declaratory judgement. *See id.* at 19.  Rather, Defendant asserts that "a court attempting to determine federal jurisdiction does not start with the complaint, but must rather realign the claims and consider whether hypothetical claims brought by the party adverse to the declaratory judgment would arise under federal law." *See id.* (citing *NASDAQ*, 770 F.3d at 1018).  Defendant, thus, avers that a coercive action would be stated under

federal law for three reasons.  *See id*.  First, because if he were to file a motion for fees, he would do so in the United States District Court for the District of Columbia.  *See id*.  Second, that any coercive action would depend on the VSST because it places a cap on attorney's fees.  *See id.* at 20 (citing 42 U.S.C. § 10609).  Third, that because the only non-frivolous action against Defendants in this case rests on the interpretation of 28 U.S.C. § 1608(e), he would state his claim in terms that establish compliance with the requirements of FSIA.  *See id*.

### c. Analysis

Federal district courts have "original jurisdiction" over civil actions "arising under" federal law.  28 U.S.C. § 1331.  District courts also have removal jurisdiction over "any civil action brought in a State court of which the district courts of the United States have original jurisdiction[.]"  28 U.S.C. § 1441(a).  "'[F]ederal-question jurisdiction is invoked by and large by plaintiffs pleading a cause of action created by federal law . . . .'"  *N.Y. ex rel. Jacobson v. Wels Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 317 (2d Cir. 2016) (quoting *Grable*, 545 U.S. at 312, 125 S. Ct. 2363).  As Magistrate Judge Peebles found, and Defendant concedes, federal law did not create the instant cause of action, which, at its heart, is a dispute regarding charging liens, retainer agreements, and the rules of professional conduct.

However, in a "'special and small category'" of cases, federal-question jurisdiction will also "lie over state-law claims that implicate significant federal issues."  *Id*. (quotations omitted).  Nonetheless, "the Supreme Court has been sparing in recognizing state law claims fitting this criterion."  *NASDAQ OMX Grp. v. UBS Sec.*, 770 F.3d 1010, 1019 (2d Cir. 2014) (citation omitted).

- 14 -

In that regard, the Supreme Court has articulated a four-factor test: "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."  G*unn v. Minton*, 568 U.S. 251, 258 (2013).  Accordingly, a state law claim may only serve as the basis for federal-question jurisdiction if "all four of these requirements are met . . . ." *Id*.

With respect to the first factor, "[a] state-law claim 'necessarily' raises federal questions where the claim is affirmatively 'premised' on a violation of federal law."  *Jacobson*, 824 F.3d at 315 (quoting *Grable*, 545 U.S. at 314, 125 S. Ct. 2363).  However, this first element is not present where "'all [of the plaintiff's] claims s[eek] relief under state law and none necessarily raise[s] a federal issue.'"  *Id*. at 316 (quoting *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, ___ U.S. ___, 136 S. Ct. 1562, 1575, 194 L. Ed. 2d 671 (2016)).

With respect to the second factor, "the 'actually disputed' factor of the test is satisfied when the federal issue is 'the only' or 'the central' point in dispute."  *Id*. (quoting *Grable*, 545 U.S. at 315, 125 S. Ct. 2363 ("the only"); *Gunn*, 133 S. Ct. at 1065 ("the central")).

With respect to the third factor, to satisfy the "'substantial' federal issue requirement, *i.e.*, to present a legal issue that implicates 'a serious federal interest in claiming the advantages thought to be inherent in a federal forum,'" *id*. (quoting *Grable*, 545 U.S. at 313, 125 S. Ct. 2363),

> it is not enough that the federal issue be significant to the particular parties in the immediate suit; that will always be true when the state claim "necessarily raise[s]" a disputed federal issue, as *Grable* separately requires.  The substantiality inquiry under *Grable* looks instead to the importance of the issue to the federal system as a whole,

*id*. (quoting *Gunn*, 133 S. Ct. at 1066).

Finally, the fourth factor, "that the exercise of federal-question jurisdiction over a state law claim not disturb any congressionally approved balance of state and federal judicial responsibilities, focuses principally on the nature of the claim, the traditional forum for such a claim, and the volume of cases that would be affected." *Id.*

In *Jacobson*, the plaintiff sought to remand an action filed under the New York False Claims Act ("NYFCA"), alleging that the defendants had filed fraudulent federal tax forms to claim state and city tax exemptions. *See id.* at 311. The Second Circuit looked to the allegations in the complaint to determine whether the claims necessarily turned on a construction of federal law. *See id.* at 317. In so doing, the Second Circuit held that, "to establish a false statement or record within the meaning of the NYFCA, Jacobson must prove at least that the trusts did not qualify under federal law." *Id.* Thus, the court reasoned that federal jurisdiction was proper because proving a violation of federal law was a necessary component of the plaintiff's right to relief. *See id.*; *see also Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, ___ U.S. ___,136 S. Ct. 1562, 1570 (2016) (stating that a typical case is one in which a state-law cause of action is "'brought to enforce' a duty created by [federal law] because the claim's very success depends on giving effect to a federal requirement").

As recounted above, Plaintiffs brought this case to determine who is entitled to a forthcoming award of attorney's fees pursuant to a judgment obtained through the VSST. As Magistrate Judge Peebles and Defendant seem to agree, there is only one arguable basis for finding such jurisdiction. Namely, Defendant contends that, because Plaintiffs accuse him of failing to properly serve the FSIA judgement on the Republic of Iran pursuant to 28 U.S.C. § 1608(e), a substantial federal issue is unavoidably present. This putative federal issue applies, if it does at all, to Defendant Tolchin's contention that he has a valid charging and retaining lien.

Therefore, to properly analyze whether there is a federal question in this case, it is necessary to review New York law regarding attorney's liens.

Generally speaking, under New York law "there are three separate and distinct remedies which are available to a discharged attorney to recover the value of his legal services." *Butler, Fitzgerald & Potter v. Gelmin*, 235 A.D.2d 218, 218 (1st Dep't 1997). "The first remedy available to an attorney discharged without cause is . . . a plenary action in quantum meruit seeking a judgment for the reasonable value of the services, which would be enforceable against all of the client's assets." *Id*. at 218-19. A plenary cause of action accrues upon the attorney's discharge. *See id*. at 219 (citation omitted).

"The second remedy available is a charging lien against any judgment or settlement in favor of the client in an action in which the discharged attorney formerly was the attorney of record for the client." *Id*. A "charging lien does not provide for an immediately enforceable judgment against all assets of the former client." *Id.* Instead, "[a]ll it provides to the discharged attorney is security against a *single* asset of the client, i.e., any judgment or settlement reached in favor of the former client in the action in which the discharged attorney was formerly attorney of record. The charging lien is a statutory remedy codified in Judiciary Law § 475." *Id.* Finally, "[t]he third remedy is the retaining lien, which permits the attorney to retain all of the client's papers and files until all fees are paid." *Id.*

With respect to Defendant's putative charging lien, "the procedure of Judiciary Law § 475 is designed to attach only the specific proceeds of the judgment or settlement in the action where the attorney appeared[.]" *Squitieri v. Squitieri*, 77 A.D.3d 428, 428 (1st Dep't 2010) (citation omitted). In that regard, "the attorney who appears for a party has a lien upon his or her client's . . . judgment or final order in his or her client's favor, and the proceeds thereof in whatever hands

they may come[.]" N.Y. Judiciary Law § 475. The plain language of the statute reveals that there are two elements that a party must successfully prove to have a charging lien: (1) that the attorney appeared on behalf of the party; and (2) that the party received a judgment and proceeds in that action. *See, e.g., Butler*, 235 A.D.2d at 219.

As recounted above, one of Plaintiffs' grounds for denying Defendant's putative charging lien is "[t]hat [D]efendants [(specifically, Defendant Tolchin)] did not obtain a 'judgment or final order' upon which such a lien could attach." *See* Dkt. No. 2 at ¶ 90. Defendant argues that this necessarily implicates the interplay between 28 U.S.C. § 1608(e) and N.Y. Judiciary Law § 475 because, on the one hand, § 1608(e) requires that a default judgement be served to be final; and, on the other, New York law makes obtaining a final judgment a prerequisite to collecting on a charging lien. At first blush, it would appear that determining whether Defendant has an enforceable lien necessarily implicates federal law, *i.e.*, either Defendant successfully served Iran and thus obtained a final judgment and consequently a valid lien, or he unsuccessfully served Iran in which case he has nothing.

This conceptualization, however, ignores that New York Judiciary Law § 475 allows attorneys to assert a charging lien on a judgment whether or not they were the attorney who ultimately made that judgment final. *See* N.Y. Judiciary Law § 475; *see also Butler*, 235 A.D.2d at 218. It is axiomatic that the attorney seeking to recover a charging lien need not be the attorney who in fact obtained the judgement; rather, it is enough to show that the attorney worked towards that eventual end. *See Stair v. Calhoun*, 722 F. Supp. 2d 258, 267 (E.D.N.Y. 2010) (stating that, "[u]nder New York law, an attorney who is discharged is statutorily entitled to a charging lien on any monetary recoveries obtained by the former client in the proceedings in which the attorney had rendered legal services" (citing N.Y. Judiciary Law § 475); *Rosewood*

*Apartments Corp. v. Perpignano*, No. 99 Civ. 4226, 2005 WL 1084396, *3 (S.D.N.Y. May 5, 2005) (stating that, to establish a charging lien under § 475, "'there must be asserted a claim which can eventuate in there being proceeds payable to, or assets recoverable by, the client as a result of the efforts of the attorney'" (quotation omitted)).  Therefore, 28 U.S.C. § 1608(e) has no bearing on whether Defendant has a charging lien for services he rendered in furtherance of obtaining a final judgment.[4]

Nevertheless, and importantly for the present purposes, there are several affirmative defenses upon which a party may rely to defeat a charging or retaining lien.  For example, "an attorney who is discharged for cause is not entitled to a fee[.]"  *Orendick v. Chiodo*, 272 A.D.2d 901, 902 (4th Dep't 2000) (citations omitted).  Moreover, "[p]rior acts or inaction discovered after the substitution [of counsel] which constitute professional misconduct can serve as a basis of a fee forfeiture[.]"  *De Luccia v. Vill. of Monroe*, 180 A.D.2d 897, 899 (3d Dep't 1992) (citation omitted); *see also Nassour v. Lutheran Med. Ctr.*, 78 A.D.3d 671, 671-72 (2d Dep't 2010) (stating that, "'[w]here an attorney's representation terminates upon mutual consent, and there has been no misconduct, no discharge for just cause, and no unjustified abandonment by the attorney, the attorney maintains his or her right to enforce the statutory lien'" (quoting *Lansky v. Easow*, 304 A.D.2d 533, 534, 756 N.Y.S.2d 885) (other citations omitted).

Therefore, Plaintiffs' implicit reference to § 1608(e) is relevant insofar as they argue that Defendant is not entitled to a charging or retaining lien because he was incompetent in failing to

---

[4] The same is true with regard to Defendant's putative retaining lien because "[i]t is well settled that an attorney who has been discharged by his client *without cause* may invoke a retaining lien on the client's papers and files in his possession."  *Andreiev v. Keller*, 563 N.Y.S.2d 88, 88 (2d Dep't 1990).  Thus, a retaining lien effectively materializes automatically after an attorney has been discharged without cause.

properly serve the default judgment. *See* N.Y. Comp. Codes R. & Regs., tit. 22, § 1200.0, Rule 1.1 "Competence"; *see also* Dkt. No. 27 "Pl's Reply Br. Mot. to Rem.," at 3. Stated differently, the putative federal issue in this case is whether improperly effectuating service under § 1608(e) violates New York Rules of Professional Conduct.

In that regard, a court will have to consider whether Defendant Tolchin possessed the "the legal knowledge, skill, thoroughness and preparation reasonably necessary" to serve the FSIA judgment on Iran, *see* N.Y. Comp. Codes R. & Regs., tit. 22, § 1200.0, Rule 1.1(a), or that Defendant Tolchin knew or should have known "that [he] [was] not competent to handle" serving the Republic of Iran, *see* N.Y. Comp. Codes R. & Regs., tit. 22, § 1200.0, Rule 1.1(b). Thus, determining whether Defendant Tolchin's representation was incompetent will not require the Court to conclude definitively that he did, or did not, correctly serve the FSIA judgment; rather, the Court would only consider whether, under the circumstances, his representation was reasonable and whether he possessed the skills necessary to handle the matter. This case, therefore, is unlike *Jacobson* or *Grable*, where federal question jurisdiction was predicated on the interpretation of federal law to determine whether a state cause of action was viable. *See, e.g., Jacobson*, 824 F.3d at 317 (federal tax law); *Grable*, 545 U.S. at 311 (federal tax law).

The federal issue here is only tangentially present as a basis for asserting that Defendant Tolchin acted incompetently. However, attorney competence is primarily a state issue. Therefore, the Court finds that the lone federal issue ostensibly present here cannot form the basis of federal question jurisdiction under the four-factor test the Supreme Court articulated in *Gunn* and explained in *Jacobson*. *See Gunn*, 568 U.S. at 260 (explaining that "[t]he substantiality inquiry . . . looks . . . to the importance of the issue to the federal system as a whole"); *see also Grable*, 545 U.S. at 313 (stating that "it has in fact become a constant refrain . . . that federal

jurisdiction demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum" (citations omitted)).

Moreover, as Defendant notes, "a complaint seeking a declaratory judgment is to be tested, for purposes of the well-pleaded complaint rule, as if the party whose adverse action the declaratory judgment plaintiff apprehends had initiated a lawsuit against the declaratory judgment plaintiff." *Fleet Bank, Nat. Ass'n v. Burke*, 160 F.3d 883, 886 (2d Cir. 1998) (citing *Public Service Commission v. Wycoff Co.*, 344 U.S. 237, 248, 73 S. Ct. 236, 97 L. Ed. 291 (1952) ("Where the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction in the District Court")) (other citation omitted).  Thus, in deciding whether there is a federal question, the Court must flip the case on its head and imagine that Defendant has filed an affirmative action seeking to enforce his putative charging and retaining liens.  *See id*.

Framed in this way, the only alleged federal issue arises as an element of proof in a potential affirmative defense.  However, "if a complaint alleges only state law based causes of action, it cannot be removed from state court to federal court even if there is a federal defense." *Hernandez v. Conriv Realty Assocs.*, 116 F.3d 35, 38 (2d Cir. 1997) (citation omitted).  Thus, had Defendant initiated this case, it would have sounded exclusively in state law.

Defendant gives three reasons why an affirmative case would satisfy federal question jurisdiction, none of which the Court finds persuasive.  First, Defendant argues that, if he were to file a motion for fees, he would do so in the United States District Court in the District of Columbia.  *See* Dkt. No 38 at 19.  However, that hypothetical action would come under the

court's ancillary rather than original jurisdiction.  Second, he argues that any coercive action would depend on the VSST because it places a cap on attorney's fees.  *See id.* at 20 (citing 42 U.S.C. § 10609).  However, Defendant's right to part of the FSIA judgment arises, if at all, under New York law regarding attorney's liens, not the VSST.  Finally, he argues that, because the only non-frivolous action against Defendants in this case rests on the interpretation of 28 U.S.C. § 1608(e), he would state his claim in terms that establish compliance with the requirements of FSIA.  *See id.*  However, an anticipated defense cannot serve as the basis for federal question jurisdiction.

In sum, the Court accepts Magistrate Judge Peebles' recommendation to remand this case to state court for the reasons stated herein and in Magistrate Judge Peebles' Report and Recommendation.


### d. Attorney's fees award

Magistrate Judge Peebles recommended that the Court deny both parties' competing motions for attorney's fees pursuant to 28 U.S.C. § 1447(c).  *See generally* Dkt. No. 37.  The parties do not object to Magistrate Judge Peebles' recommendation, and the Court has not identified an error in his analysis.  Therefore, the Court accepts Magistrate Judge Peebles' recommendation and denies the parties' motions for attorney's fees related to Defendant's improper removal.

**C.      Defendant's motion to change venue**

In light of the Court's decision to grant Plaintiffs' motion to remand this case, it accepts Magistrate Judge Peebles' recommendation to deny Defendant's motion to change venue as moot.


**IV. CONCLUSION**

Having reviewed the entire file in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Magistrate Judge Peebles' March 23, 2017 Report and Recommendation, *see* Dkt. No. 37, is **ACCEPTED** in its entirety for the reasons stated therein; and the Court further

**ORDERS** that Plaintiffs' motion to remand this action to New York State Supreme Court, *see* Dkt. No. 12, is **GRANTED**; and the Court further

**ORDERS** that Plaintiffs' motion for an award of attorney's fees in relation to their motion to remand, *see id.*, is **DENIED**; and the Court further

**ORDERS** that Defendants' cross-motion for an award of attorney's fees in relations to its defense of Plaintiffs' motion to remand, *see* Dkt. No. 21, is **DENIED**; and the Court further

**ORDERS** that Defendants' motion to transfer venue, *see* Dkt. No. 5, is **DENIED as moot**; and the Court further

**ORDERS** that the Clerk of the Court shall mail a certified copy of this Memorandum-Decision and Order to the Clerk of the New York State Supreme Court, Albany County, as 28 U.S.C. § 1447(c) requires.

**IT IS SO ORDERED.**

Dated: July 24, 2017
      Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge